Mrs. Joseph GITTERMAN and Suzanne Wasser, Plaintiffs,

v.

Murray VITOULIS, John Barbarette, Eli Doberman and VB Carpet Service, Defendants.

No. 82 Civ. 5908 (RWS).

United States District Court, S.D. New York.

Dec. 29, 1982.

Barrett, Smith, Shapiro, Simon & Armstrong, New York City, for plaintiffs; Frederic W. Parnon, New York City, of counsel.

Issler & Schrage, P.C., New York City, for defendants.

## OPINION

SWEET, District Judge.

Plaintiffs Mrs. Joseph Gitterman ("Mrs. Gitterman") and Suzanne Wasser ("Ms. Wasser") commenced this action seeking treble damages pursuant to the civil enforcement provisions of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–68, for two alleged thefts of personal jewelry. Defendants Murray Vitoulis ("Vitoulis"), John Barbarette ("Barbarette"), and VB Carpet Service ("VB Carpet") have moved pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss the complaint for failure to state a claim upon which relief can be granted. For the reasons stated below, the motion will be denied.

The complaint alleges that two thefts, one in September 1979 from Mrs. Gitterman's Manhattan apartment and one in September 1981 from Ms. Wasser's Manhattan apartment, were perpetrated by VB Carpet and persons associated with VB Carpet, including each of the individual defendants. In essence, the plaintiffs claim that the defendants violated sections 1962(a), (b), (c), and (d) of RICO[1] by engaging in a "pattern of racketeering activity" through their participation in an "enterprise," as those terms are defined in section 1961. They assert that they are entitled to damages pursuant to section 1964(c).[2] The facts underlying this claim, as alleged in the complaint, are as follows:

Mrs. Gitterman, who is Ms. Wasser's grandmother, hired VB Carpet to clean certain carpets in her apartment in September 1979. Vitoulis and another person arrived,

---

1. Section 1962 reads, in pertinent part:

(a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in or the activities of which affect, interstate or foreign commerce.

. . . . .

(b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect interstate or foreign commerce.

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section.

2. Section 1964(c) reads:

(c) Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

cleaned the carpets and were paid. They voluntarily returned later in September 1979 to do more cleaning. A few days later, Mrs. Gitterman discovered that the stones in two diamond rings that she owned had been replaced with glass imitations. The theft was reported to the police.

The complaint goes on to allege that in September, 1981 defendants Barbarette and Eli Doberman ("Doberman") arrived at Ms. Wasser's apartment and said that they had come to clean her carpets on behalf of VB Carpet. Ms. Wasser admitted them, left for a short time, and returned to find Barbarette and Doberman in her bedroom with the door closed. They remained there for approximately thirty minutes and then left the bedroom and the apartment. Ms. Wasser immediately checked her jewelry box and discovered that a "dirty fake diamond" had been substituted for the genuine stone in a ring she had worn the night before. She ran after Barbarette and Doberman and caught them in the street. Barbarette returned with her to the apartment and allegedly made certain statements that implicated him and Doberman in the theft. When Barbarette and Ms. Wasser returned to the street, they found that Doberman had fled. Ms. Wasser subsequently found that two other diamonds that she owned had been replaced with imitations.

Ms. Wasser pressed charges against Vitoulis, Barbarette, and Doberman with the New York police. Vitoulis and Barbarette were arrested and booked. Doberman could not be located despite efforts by the plaintiffs, their attorneys, and the New York police, and his present whereabouts are unknown. The charges against Vitoulis and Barbarette were dismissed.

The plaintiffs contend, based on these allegations, that VB Carpet and the individual defendants operated as an organized criminal gang and conspired to gain entry to apartments as ostensible carpet cleaners so that they could steal jewelry, and that these activities violated sections 1962(a), (b), (c), and (d) of RICO. They therefore seek treble damages pursuant to section 1964(c) of RICO as "person[s] injured in [their]

business or property by reason of a violation of section 1962." The defendants argue that the RICO claims should be dismissed because the alleged injury suffered by the plaintiffs is not an "injury to property" within the meaning of section 1964(c). They claim that the injury contemplated by the civil remedial provisions of RICO includes only "commercial loss" and not loss of private property, as occurred here.

■ Some courts have recently embraced the notion that the injury required under section 1964(c) must be an injury to competitive or commercial interests. *See, e.g., Van Schaick v. Church of Scientology,* 535 F.Supp. 1125, 1136–37 (D.Mass.1982); *North Barrington Development, Inc. v. Fanslow,* 547 F.Supp. 207 (N.D.Ill.1980). However, the language of the Act places no such restriction on the type of injury required nor does the legislative history of the Act support such an interpretation, *see* Note, *Civil RICO: The Temptation and Impropriety of Judicial Restrictions,* 95 Harv.L.Rev. 1101, 1110–14 (1982) [hereinafter cited as "Note, *Civil RICO*"]. Indeed, the weight of authority, and in this court's opinion the proper interpretation, is that competitive or commercial loss is not required for recovery of damages under RICO. *See Bennett v. Berg,* 685 F.2d 1053, 1058–59 (8th Cir.1982); *Hellenic Lines, Ltd. v. O'Hearn,* 523 F.Supp. 244, 248 (S.D.N.Y.1981). *See also Landmark Savings & Loan v. Rhoades,* 527 F.Supp. 206, 208 (E.D.Mich.1981); Note, *Civil RICO, supra,* 95 Harv.L.Rev. at 1111–14. RICO was enacted not only to protect legitimate businesses from infiltration by racketeers, *see Van Schaick v. Church of Scientology, supra,* 535 F.Supp. at 1137, but also to inflict financial injury on racketeers, *see United States v. Turkette,* 452 U.S. 576, 591–92, 101 S.Ct. 2524, 2533, 69 L.Ed.2d 246 (1981); Note, *Civil RICO, supra,* 95 Harv.L.Rev. at 1112–13 & n. 65; Blakely & Gettings, *Racketeer Influenced and Corrupt Organizations (RICO): Basic Concepts—Criminal and Civil Remedies,* 53 Temp.L.Q. 1009, 1042 (1980). Thus, restriction of the class of plaintiffs who may seek relief pur-

suant to section 1964(c) to businesses is not warranted.

This does not mean, however, that the class of plaintiffs is unlimited. A person suing under section 1964(c) must show injury "by reason of a violation of section 1962." This court has interpreted this to require a "racketeering enterprise injury." *Alton v. Alton,* No. 82 Civ. 795 (S.D.N.Y. July 9, 1982). *See Landmark Savings & Loan v. Rhoades, supra,* 527 F.Supp. at 208–09. In *Alton* this court dismissed a RICO claim brought pursuant to section 1964(c) because there was no claim of injury from the alleged racketeering enterprise. Slip op. at 7. Rather, *Alton* was essentially a private matrimonial dispute between former spouses in which two personal common law fraud claims were alleged to constitute both the pattern of racketeering activity and the injury. *Id.* at 6–9.

The complaint in this action goes much further. It alleges that VB Carpeting operated as an organized criminal gang, that the thefts of Mrs. Gitterman's and Ms. Wasser's jewelry were part of a pattern of criminal activity and systematic fraud, and that the defendants conspired on numerous occasions to gain entry to apartments in order to commit thefts by replacing genuine diamonds with fakes. Thus, while the loss that the plaintiffs have alleged is purely personal, the alleged impact of the activities that the plaintiffs ascribe to the defendants is not. Indeed, the type of scheme alleged in the complaint is one of those that RICO was specifically enacted to combat, i.e., the infiltration of legitimate businesses by organized crime. *See United States v. Turkette,* 452 U.S. 576, 591–93 & n. 13, 101 S.Ct. 2524, 2533–34 & n. 13, 69 L.Ed.2d 246 (1981).

The defendants also argue that the complaint should be dismissed because it fails to allege facts to support the claim of defendants' "racketeering activity." The defendants specifically attack paragraph 38 of the complaint which reads:

The precise nature of the interstate or foreign commerce activities engaged in by the defendants, operating as an organized criminal gang or ring engaged in stealing, concealing and disposing of diamonds is, at this time, exclusively within the knowledge of the defendants. However, the interstate or foreign commerce activities that defendants are believed to have engaged in as part of the theft of diamonds from plaintiff Mrs. Joseph Gitterman and Suzanne Wasser on those two occasions include some or all of the following "predicate acts" under § 1961 of the RICO statute:

(a) use of the mails in furtherance of defendants' schemes to defraud the plaintiffs, in violation of 18 U.S.C. § 1341;

(b) interstate telephone calls in furtherance of defendants' scheme to defraud the plaintiffs, in violation of 18 U.S.C. § 1343;

(c) interstate transportation of stolen goods (the diamonds), in violation of 18 U.S.C. § 2314; or

(d) the sale, receipt, concealment, storage, bartering or disposing of stolen goods (the diamonds) while those goods were moving in interstate or foreign commerce, in violation of 18 U.S.C. § 2315.

Plaintiffs require discovery from the defendants to obtain proof of the precise nature of the interstate or foreign commerce activities engaged in by the defendants.

The purpose of a motion to dismiss is not to test the weight of the evidence which might be offered in support of it but to assess the legal feasibility of the complaint. *Geisler v. Petrocelli,* 616 F.2d 636, 639 (2d Cir.1980). Dismissal of a complaint before discovery is a drastic step which should not be taken unless it appears to a certainty that the plaintiff is entitled to no relief under any set of facts which could be proved in support of the claim. *Wade v. Johnson Controls, Inc.,* 693 F.2d 19, 22 (2d Cir.1982).

It is not beyond the realm of possibility that the plaintiffs could prove two or more of the predicate acts listed in ¶ 38.

Indeed, Doberman's apparent flight is grounds for drawing an inference that the alleged thefts involve interstate activities. Furthermore, pleading on information and belief is permissible where, as here, the facts are peculiarly within the knowledge of the defendants. *See Perington Wholesale, Inc. v. Burger King Corp.,* 631 F.2d 1369, 1372–73 (10th Cir.1979) (quoting *Carroll v. Morrison Hotel Corp.,* 149 F.2d 404, 406 (7th Cir.1945)); 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1224 (1969).

Finally, defendants object to allowing discovery to establish the elements of a RICO violation on the ground that it "raises serious Fifth Amendment problems." Defendants make this argument, however, in a vacuum. They are free to object to discovery demands or to seek a protective order to preserve their Fifth Amendment rights, but in the absence of a specific demand or objection no relief can be granted.

For the reasons stated above, the motion to dismiss the complaint is denied.

IT IS SO ORDERED.