Mrs. Joseph **GITTERMAN** and Suzanne Wasser, Plaintiffs,

v.

Murray **VITOULIS**, John Barbarette, Eli Doberman and VB Carpet Service, Defendants.

No. 82 Civ. 5908 (RWS).

United States District Court, S.D. New York.

Sept. 28, 1983.

Barrett, Smith, Schapiro, Simon & Armstrong, New York City, for plaintiffs; Frederick Parnon, New York City, of counsel.

Issler & Schrage, P.C., New York City, for defendants; Mitchell R. Schrage, New York City, of counsel.

## OPINION

SWEET, District Judge.

Defendants Murray Vitoulis ("Vitoulis"), John Barbarette ("Barbarette"), and VB Carpet Service ("VB") have moved pursuant to Fed.R.Civ.P. 56 for summary judgment dismissing the complaint of plaintiffs Mrs. Joseph Gitterman ("Gitterman") and Suzanne Wasser ("Wasser"). In the alternative, these defendants have moved pursuant to Fed.R.Civ.P. 42 to sever the claims against them from those against defendant Eli Doberman ("Doberman"), who has failed to answer the complaint and is in default. For the reasons stated below, the motion for summary judgment will be granted.

The facts in this action are fully set out in our earlier opinion, dated December 29, 1982. 564 F.Supp. 46. Briefly stated, the complaint alleges that on two separate occasions, while operating under the cover of cleaning carpets in plaintiffs' respective apartments, defendants substituted glass imitations for valuable diamonds in several pieces of personal jewelry belonging to Gitterman and Wasser. Seeking to draw an inference of interstate involvement and conversion of the diamonds from Doberman's flight after the alleged theft of Wasser's jewelry, plaintiffs assert that these two instances of alleged fraud constitute a violation of section 1962 of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 et seq., and establish the requisite "pattern of racketeering activity" necessary for treble damage recovery under 18 U.S.C. § 1964(c), the civil remedy section of the statute.[1] At the time this complaint was filed, a similar action, minus the RICO claims, was pending in the New York State court.

Defendants have contended throughout this action that plaintiffs have failed to establish the necessary elements of a RICO claim, that the pendent state claims must fail without the umbrella of the federal

---

1. 18 U.S.C. § 1964(c) provides:

    Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

question, that state remedies are available to plaintiffs if they can prove their case of fraud and conversion, and that plaintiffs are using the flight and absence of Doberman to establish circumstantial connections with the answering defendants because of plaintiffs' lack of any substantial evidence against Vitoulis, Barbarette, or VB.

In opposition to defendants' motion for summary judgment, plaintiffs offer only their own attorney's affirmation and what they contend are inconsistent statements in defendants' depositions. They claim that issues of material fact remain, including the question of defendants' use of the "facilities of interstate commerce" and the question of the defendants' credibility.

In addition, in the event the RICO claims are dismissed, plaintiffs urge this court, in its discretion, to hear the pendent state claims. Pointing to the fact that this case has been ready for trial for over three months, plaintiffs' counsel states that relegating this controversy to state court at this late date will cause undue inconvenience and hardship to plaintiffs, one of whom is 97 years old.

An earlier motion to dismiss the complaint for failure to state a claim was denied at the pre-discovery stage in order to give plaintiffs the opportunity to establish the elements of their claim. Discovery is now complete, but, even if the plaintiffs' version of the facts is accepted for purposes of this motion, there is, as a matter of law, no RICO violation.

■ First, plaintiffs have been unable to produce any evidence of defendants' involvement in interstate commerce, a necessary condition of a section 1962 violation. Plaintiffs maintain that their lack of such evidence is a function of defendants' refusal to produce business records relating to residential customers—records defendants maintain do not exist since residential customers pay on the spot and do not have the same need of tax records as commercial customers. Both Gitterman and Wasser paid by check at the time the cleaning was completed, consistent with defendants' stated procedure. Plaintiffs were unable to locate any evidence of bills or other materials (which presumably might have been sent through the mails) from VB Cleaning Service. While for purposes of a summary judgment motion this court is required to consider the facts in the light most favorable to the non-moving party, it is not required to speculate as to the existence of facts for which there is no evidence in the record. *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir.1980).

■ Plaintiffs also urge that intrastate phone calls between Wasser and defendants (stipulated to by the parties) constitute communications sufficient to establish interstate commerce since intrastate and interstate phone lines make up one network. Plaintiffs cite *REA Express, Inc. v. Interway Corp.*, 410 F.Supp. 192 (S.D.N.Y.), *reversed on other grounds*, 538 F.2d 953 (2d Cir.1976), in support of this proposition. However, *REA Express* and the subsequent string of cases cited in plaintiffs' brief are not applicable to the present situation since they all deal with the telephone network as a facility for a national securities exchange. Interpreting section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b) (1976), and Rule 10b–5, 17 C.F.R. § 240.10b–5 (1982), those cases rest on specific regulatory language prohibiting the use of manipulative or deceptive devices through *"any means or instrumentality* of interstate commerce." 17 C.F.R. § 240.10b–5 (1982) (emphasis added). The telephone is admittedly an "instrumentality" of a national telephone network and thus establishes the requisite nexus under Rule 10b–5 the moment it is used. For purposes of establishing a RICO violation, however, the statutory language requires that the alleged enterprise either be "engaged in," or have activities "which affect," interstate or foreign commerce. 18 U.S.C. §§ 1962 *et seq.* There is no authority for plaintiffs' proposition that intrastate use of the telephone is equivalent to an effect on interstate commerce by the enterprise, and this court declines to so hold. The flight by the alleged co-conspirator Doberman also fails

to provide such an effect for the enterprise. Thus, plaintiffs' *prima facie* case fails on the narrow jurisdictional ground alone. However, in the interest of complete disposition, the merits of the plaintiffs' claim will also be considered.

Of course, a summary judgment motion requires this court to resolve all ambiguities and draw all reasonable inferences in favor of the non-moving party. *Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317, 1320 (2d Cir.1975). Notwithstanding, review of the record in light of the statute's legislative history and recent judicial interpretation reveals that the RICO claim must fail on its merits.

RICO was enacted to provide "enhanced sanctions and new remedies to deal with the unlawful activities of those engaged in organized crime." Organized Crime Control Act of 1970, Pub.L. No. 91–452, 84 Stat. 922, *reprinted in* 1970 U.S.Code Cong. & Ad.News 1073. Congress drafted RICO to survive constitutional challenges of vagueness and avoided the creation of a status offense by including in the definitional section, 1961 a virtual laundry list of felony offenses known to federal or state law which would constitute the predicate offenses. As a result, the RICO statute as written appears constitutionally unassailable, but the combined temptation of access to federal courts, together with the prospect of treble damages, has resulted in a proliferation of RICO claims running far afield from organized crime, the original target of the Congressional enactment. *See, e.g., Alton v. Alton*, No. 82 Civ. 795 (S.D.N.Y. July 9, 1982) (RICO claim dismissed in a matrimonial dispute with claims of fraudulent inducement of a separation agreement).

The statutory language has on occasion been given a broad interpretation by some courts, which has raised the spectre of such a dramatic shift to federal courts of what have been traditionally state claims that at least one legal scholar has suggested that if the present trend continues, the Supreme Court may be forced to declare RICO unconstitutional on principles of federalism.[2]

The Second Circuit, in its most recent RICO decision, has set forth the pleading burdens imposed upon a plaintiff to state a claim for damages under RICO:

> First, he must allege that the defendant has violated the substantive RICO statute, 18 U.S.C. § 1962 (1976), commonly known as "criminal RICO." In so doing, he must allege the existence of seven constituent elements: (1) that the defendant (2) through the commission of two or more acts (3) constituting a "pattern" (4) of "racketeering activity" (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an "enterprise" (7) the activities of which affect interstate or foreign commerce. Plaintiff must allege adequately defendant's violation of section 1962 before turning to the second burden—*i.e.,* invoking RICO's civil remedies of treble damages, attorneys' fees and costs. To satisfy this latter burden, plaintiff must allege that he was "injured in his business or property *by reason of* a violation of section 1962."

*Moss v. Morgan Stanley, Inc.*, 719 F.2d 5 at 17 (2d Cir.1983).

Assuming plaintiffs have adequately alleged that defendants' activities affected interstate commerce, contrary to the conclusion stated above, they have met their initial burden of pleading. Plaintiffs have adequately alleged that defendants engaged in "racketeering activity." Section 1961(5) defines "pattern of racketeering activity" as at least two acts of "racketeering activity" occurring within ten years of each

**2.** Bradley, *Racketeers, Congress, and the Courts: An Analysis of RICO,* 65 Iowa L.Rev. 837 (1980). A similar concern has been expressed in connection with proposed legislation federalizing products liability law by the Committee on Federal Legislation in their report to the Association of the Bar of the City of New York. Like RICO, Senate Bill 44 is not preemptive on its face, but in practice it too could affect an extraordinary shift in the relationship between the states and the federal government. Report of May 10, 1983 to the Association of the Bar of the City of New York, p. 16.

other. 18 U.S.C. § 1961(5) (1976).[3] Section 1961, in turn, defines "racketeering activity" as including "any act or threat involving ... robbery ... which is chargeable under State law and punishable by imprisonment for more than one year." 18 U.S.C. § 1961(1)(A).

■ Plaintiffs have failed, however, to meet their second burden of pleading because they have failed to show that they were "injured in [their] business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c) (1976) (emphasis added). Plaintiffs have failed to assert any injury resulting from a violation of section 1962 as distinguished from the predicate acts that constitute racketeering activity.[4]

A major source of the broadening application of RICO has been the confusion of the section 1961 list of predicate acts (any two of which within a 10-year period constitute a "pattern of racketeering activity") with violations of section 1962 itself, which enumerates four specific prohibited activities which Congress believed would address the infiltration of organized crime's substantial financial resources into the stream of legitimate business. The predicate acts in section 1961 simply represent the myriad kinds of criminal activity racketeers engage in to produce the profits that build their financial empires; the provisions of section 1962 specifically proscribe uses of that "ill-gotten" gain. As Judge Friendly stated in a recent decision involving the application of RICO in criminal prosecutions: "In sum, RICO is the lineal descendant of a pair of 1967 Senate bills designed to apply antitrust-type measures to the problem of 'black-money.' ... Under the rationale of [*U.S. v.*] *Turkette*, [452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1980)], then, RICO arguably applies to any organization legitimate or not, whose activities generate monies which can serve as a "springboard into the spheres of legitimate enterprise." *United States v. Ivic*, 700 F.2d 51, 63 (2nd Cir.1983) (reversing a RICO conviction on the grounds that the conduct charged in the indictment and proved at trial did not constitute a § 1962 offense).

A growing number of courts have interpreted 18 U.S.C. § 1964(c) to require something more than a direct injury resulting from the predicate acts. The Second Circuit did not reach the question of what type of injury is required by section 1964(c) in *Moss* because in that instance plaintiff failed to state a valid section 10(b) or Rule 10b–5 claim and therefore failed to establish the requisite predicate acts. *Moss, supra*, at 20 n. 16. However, the underlining of the "by reason of" language must be understood to emphasize the issue.

---

**3.** 18 U.S.C. § 1961(5) provides:
"pattern of racketeering activity" requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity.

**4.** 18 U.S.C. § 1962 provides:
(a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. A purchase of securities on the open market for purposes of investment, and without the intention of controlling or participating in the control of the issuer, or of assisting another to do so, shall not be unlawful under this subsection if the securities of the issuer held by the purchaser, the members of his immediate family, and his or their accomplices in any pattern of racketeering activity or the collection of an unlawful debt after such purchase do not amount in the aggregate to one percent of the outstanding securities of any one class, and do not confer, either in law or in fact, the power to elect one or more directors of the issuer.
(b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

In the past, this court has held that a civil RICO damage action requires an allegation of "racketeering enterprise injury." *Atlas Imports v. Midgulf Corp.*, No. 81 Civ. 5035, slip op. at 5 (S.D.N.Y. June —, 1983); *Gitterman v. Vitoulis*, 564 F.Supp. 46 at 49 (S.D.N.Y.1982); *Alton v. Alton, supra*, slip op. at 6–7, without seeking to define further our understanding of what might constitute such an injury. Here, in this case, at the pleading stage, I found the plaintiffs' allegations to be sufficient. I now conclude I was in error and choose to join the Honorable William C. Conner of this court in limiting the definition of "racketeering enterprise injury" to those plaintiffs who have suffered injury "by reason of" the defendant's racketeering activities. In doing so, I agree with his statement in *Bankers Trust v. Feldesman*, 566 F.Supp. 1235 (S.D.N.Y.1983), that such an interpretation is in keeping with the limitations inherent in the statute's language and legislative history:

> The words of § 1964 expressly require that a private plaintiff be injured "by reason of a violation of section 1962" in order to maintain an action for damages. Unless these words have no effect, they can only mean that the plaintiff's injuries must derive from the "pattern of racketeering activity" which violated § 1962 rather than directly from the underlying acts which combine to constitute that pattern.

*Id.*, at 1240–41.

The motion dismissing the RICO complaint was granted in *Bankers Trust* where "the facts alleged ... strongly suggest a sinister scheme to defraud the bank ... [but where] the harm ... allegedly caused Bankers was directly caused by an ordinary, albeit complex, bankruptcy fraud." *Id.* at 1242. To hold otherwise would be to replace the rule that treble damages can be recovered only when there is an injury "by reason of a violation of section 1962," with a rule permitting recovery *whenever* there has been a violation of section 1962.[5] In the words of one commentator, "Such unwarranted judicial interference with the [civil RICO] Act's plain meaning cannot be justified." Comment, *Reading the "Enterprise" Element Back into RICO: Sections 1962 and 1964(c)*, 76 Nw.U.L.Rev. 100, 128 (1981).

This interpretation is not inconsistent with the Congressional requirement that the statute be liberally construed to effectuate its remedial purposes. Organized Crime Control Act of 1970, Pub.L. No. 91–452, Title IX, § 904, 84 Stat. 947 (1970). A plaintiff can be compensated adequately for any losses suffered since federal or state law almost invariably provides a damage recovery for injuries suffered from the predicate acts. *See Landmark Sav. & Loan v. Loeb Rhoades Hornblower & Co., supra*, 527 F.Supp. 206, 209 (E.D.Mich. 1981). As noted earlier, plaintiffs have an action pending in New York State court, arising out of this same controversy, that will provide them relief if they prove their allegations.

Since plaintiffs have failed to establish a RICO violation because they assert no injury by reason of a violation of section 1962 as distinguished from the direct injury inherent in the predicate acts themselves, the motion for summary judgment will be granted and the complaint will be dismissed as to all defendants.

**IT IS SO ORDERED.**

---

5. Thus, in a case where a marine contractor brought suit against competitors who, through bid rigging, had defrauded purchasers, the injury to plaintiff, who was unable to compete except at ruinously low rates, was clearly "by reason of" the fraudulent activities and appropriate for the treble damage award. *Ingram v. McDermott*, 495 F.Supp. 1321 (E.D.La.1980). *See* Comment, *supra*, 76 Nw.U.L.Rev. at 127 n. 158.